UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNESTO GIOVANNI CALDERON RAMIREZ,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-11633

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Before the Court is Petitioner's Ex Parte Motion for Temporary Restraining Order ("TRO"). On October 8, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an Ex Parte Motion for Temporary Restraining Order seeking his release from custody and to enjoin Defendants from re-detaining him absent prior notice and a pre-deprivation hearing. Dkt. No. 2. For the following reasons, the TRO is GRANTED.

## I. BACKGROUND

According to the record before the Court, Petitioner and his son were apprehended by immigration authorities near the border in March 2019, held for several days, and released into the community, fitting Ramirez with an ankle monitor. Pet. ¶¶ 15-17. He reported for check-ins, and in 2019 officers removed the monitor and did not replace it. Pet. ¶ 18. His removal proceedings were dismissed in 2022 without an order of removal. Pet. ¶ 19. He lives in the Bay Area with Ms. Garcia. Pet. ¶ 10. He has no criminal convictions, and the District Attorney has confirmed that no criminal complaint was ever issued arising from his 2023 arrest. Pet. ¶ 37; Petty Decl. Ex. C.

In 2026, Ms. Garcia applied to sponsor her son (Mr. Ramirez's stepson) and niece out of ORR custody. Pet. ¶ 20. The couple completed background checks, DNA testing, and a home study, and their home was tentatively approved for the children's placement. Pet. ¶ 24. After

questioning Ms. Garcia at 630 Sansome Street, an agent texted Mr. Ramirez to request an interview. Pet. ¶¶ 25-27. When Mr. Ramirez explained that his wife was the sponsor applicant and offered to answer questions by text, the agent refused: "Sir, we need to do the interview face to face, and if we do not do your interview, there is a good possibility that the children will not be released to your home." Petty Decl. Ex. A at 1-2; Pet. ¶¶ 28-29. The agent then sent an HIS appointment notice directing Mr. Ramirez to the "8th Floor Duty Agent Desk" at 7:00 a.m. on October 8, 2026, to "[d]iscuss sponsorship of minor child." Petty Decl. Ex. B; Pet. ¶ 31.

Mr. Ramirez complied. When he arrived as instructed, officers barred his interpreter, conducted no interview, and arrested him, telling him he was detained because he had entered without inspection, a fact Respondents have known since 2019. Pet. ¶¶ 32-34. ICE served him with a Notice to Appear for a hearing in immigration court in McFarland, California, on October 28, 2026. Pet. ¶ 35.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing

irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.' " *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030-36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances). That the government has not sought to detain Petitioner over the past six years while his immigration applications have been pending reflects a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. His interest in freedom from imprisonment "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The risk of erroneous deprivation was total: he received no process of any kind, and no neutral decisionmaker has ever found that he poses a danger or flight risk. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a

hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv 01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25 cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a

restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO application is granted as detailed below.

The requirements for issuing a TRO without notice are met here. *See* Fed. R. Civ. P. 65(b)(1). Petitioner's filings set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Additionally, counsel states that she contacted counsel at the U.S. Attorney's Office for the Northern District of California on October 8, 2026. *See* Dkt. No. 2-1 ¶¶ 2-3; *see also* Fed. R. Civ. P. 65(b)(1)(B).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Petitioner from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by 9:00 a.m. on October 9, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on October 16, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Petitioner's motion by no later than October 13, 2026. Respondents are DIRECTED to address in their response why their actions are not enjoined and in violation of the preliminary injunction issued in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025). Any reply SHALL be filed by noon on October 15, 2026. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until 6:00 p.m. on October 22, 2026, or as otherwise directed by the Court.

**IT IS SO ORDERED.**

Dated: October 8, 2026, 6:10 p.m.

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**