UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO CALDERON RAMIREZ, Plaintiff, v. SERGIO ALBARRAN, et al., Defendants. | Case No. 26-cv-11633-PCP **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** Re: Dkt. No. 1 |

Petitioner Ernesto Giovanni Calderon Ramirez is a native and citizen of Guatemala who has lived in the United States for over seven years. On October 8, 2026, Immigration and Customs Enforcement ("ICE") arrested Ramirez at its San Francisco field office under the false pretense of an interview pertaining to his sponsorship of unaccompanied minors. That same day, Ramirez filed this petition for a writ of habeas corpus, claiming that his detention violated his due process rights and the Administrative Procedure Act, along with an ex parte motion for a temporary restraining order. After issuing a temporary restraining order, the Court heard argument on the petition on October 19, 2026. For the reasons set forth below, the Court now grants the petition and enjoins the government from re-detaining Ramirez without first providing him with a hearing before a neutral decisionmaker.

## I. BACKGROUND

Ramirez and his wife, Zulma Bercian Garcia, fled Guatemala for the United States in 2019 after Garcia was threatened and shot in the leg for her participation in a community protection organization. Petition, Dkt. No. 1, ¶ 15. Immigration officials detained Ramirez for three to five days upon his arrival and then released him with an ankle monitor. *Id.* ¶ 17. During one of his early check-ins, officials removed Ramirez's ankle monitor and did not replace it. *Id.* ¶ 18. Ramirez was placed in immigration court proceedings before the Omaha, Nebraska Immigration

United States District Court Northern District of California

Court, where he sought asylum. *Id.* ¶ 19. An immigration judge dismissed the removal proceedings in 2022. *Id.* Ramirez apparently has had no encounters with immigration officials between that 2022 dismissal and his October 2026 detention.

The sequence of events leading to Ramirez's re-detention began sometime in 2026, when Garcia's niece and son from a prior marriage arrived in the United States as unaccompanied minors and were placed in the custody of the Office of Refugee Resettlement ("ORR"). *Id.* ¶ 20. Garcia and Ramirez applied to sponsor Garcia's son and niece and to secure their release from an ORR children's shelter. *Id.* During what she believed to be one of the last steps in the sponsorship process, Garcia went to ICE's San Francisco field office at 630 Sansome Street to complete a DNA test. *Id.* ¶ 25. After the test, an agent conducted an unscheduled interview with Garcia about her immigration history and family. *Id.*

The same agent, apparently unaffiliated with ORR, reached out to Ramirez to schedule an in-person interview. *Id.* ¶¶ 26–27, 36. The agent represented that the interview was a necessary step in the sponsorship process and threatened that if Ramirez failed to submit for the interview, "there is a good possibility that the children will not be released to your home." *Id.* ¶¶ 28–29. Petitioner arrived at 630 Sansome for his interview on time with an interpreter and his documents. *Id.* ¶ 32. There was no interview. Instead, immigration officials detained Ramirez and issued a Notice to Appear. *Id.* ¶¶ 33–35.

The same day, Ramirez filed this petition for a writ of habeas corpus and an ex parte motion for a temporary restraining order. *Id.* ¶ 1; Dkt. No. 2. The Court granted the motion that evening, ordered Ramirez's immediate release, and enjoined his re-detention absent a pre-deprivation bond hearing before a neutral decisionmaker. Dkt. No. 3, at 5–6. The Court then ordered the government to show cause why the writ should not be granted and to make a return certifying the true cause of the detention. Dkt. No. 6. The Court also directed the parties to brief the merits of the underlying petition. *Id.*

In its response, the government argues that a 2023 arrest justified its decision to re-detain Ramirez without a hearing. In September 2023, San Pablo police arrested Ramirez on three felony domestic violence charges. Dkt. No. 9-1, at 6. There is no evidence that local prosecutors pursued

these charges.[1] Garcia explains that the couple had a heated argument, she called the police when Ramirez left the house, and Ramirez was later arrested while driving to work. Garcia Decl., Dkt. No. 11-1, ¶ 4. Garcia further asserts that she did not want the police to arrest Ramirez or to press charges, that she is not afraid of Ramirez and does not think he is unsafe, and that nothing like that argument had ever occurred in their relationship. *Id.* ¶¶ 6–7.

The Court held a hearing on the petition on October 19, 2026. At the hearing, the government requested leave to submit additional evidence justifying its decision to detain Ramirez, which the Court granted. In its supplemental filing, the government presents evidence of three additional domestic violence incidents. One police report refers to a March 2020 felony battery between Ramirez and Garcia, but there is no further evidence about the incident in the record. Dkt. No. 16-1, at 3. The same report details a March 2021 incident in which Ramirez and Garcia wrestled, Ramirez kicked Garcia in the face, and Ramirez struck one of the children with an open hand. *Id.* This appears to be the incident that gave rise to the September 2023 arrest. *Compare* Dkt. No. 9-1, at 6 *with* Dkt. No. 16-1, at 3. The government also submits evidence of a 2025 incident in which Ramirez and Garcia "lunged at each other" and Ramirez bit her thumb. Dkt. No. 16-2, at 2.[2]

The record suggests that Ramirez was neither arrested nor charged for these incidents. Moreover, the supplemental response suggests that the government was not aware of these additional incidents when it detained Ramirez, and that the 2023 arrest was "the immediate reason for [Ramirez's] detention." Supp. Resp. at 2; *see also* Dkt. No. 16-3, at 2 (Form I-213 noting only the 2023 felony arrest).

---

[1] Ramirez submitted a letter from the Contra Costa County Office of the District Attorney affirming that the office never filed a criminal complaint based on an incident "occurring on or about May 13, 2023." Dkt. No. 2-1, at 12. The parties appear to agree, however, that the September 2023 arrest stemmed from a 2021 incident, not anything that occurred in 2023. Reply to Supp. Resp., Dkt. No. 17, at 3 n.2. It is thus not clear to which May 2023 incident the Contra Costa letter refers, but either way, the government has not put forward evidence that any criminal case was ever brought against Ramirez.

[2] Ramirez raises strong arguments that the police reports are not competent evidence for lack of authentication and potential hearsay problems. Reply to Supp. Resp. at 4. As explained below, however, even assuming the truth of the police reports, their contents do not defeat Ramirez's entitlement to the writ.



United States District Court
Northern District of California

## II. LEGAL FRAMEWORK

The Court must grant a writ of habeas corpus to Ramirez if he is or will be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241; *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (concluding that federal district courts have jurisdiction to issue such relief). Ramirez contends that his initial detention and threatened re-detention violate his substantive and procedural due process rights under the Fifth Amendment. Ramirez also contends that he is a member of the certified class in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, (N.D. Cal. 2025), and that his re-detention violates the Administrative Procedure Act and the terms of this Court's stay of ICE's re-detention policy. Because Ramirez's procedural due process claim is dispositive for the reasons set forth below, the Court need not at this time consider Ramirez's other claims.

The starting point for Ramirez's due process claim is the statutory framework for immigration detention. Two statutes, 8 U.S.C. §§ 1225 and 1226, provide for the detention of noncitizens or "aliens" pending removal proceedings. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167–69 (9th Cir. 2026). Ramirez was not in removal proceedings before the instant detention, but ICE served Ramirez with a Notice to Appear on his arrest, thus bringing his detention within the statutory framework. Petition ¶¶ 19, 35.

Under § 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). Such individuals are subject to mandatory detention unless an exception applies. *See* 8 U.S.C. § 1225(b). For noncitizens like Ramirez who are "already in the country," § 1226 permits detention "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. But unlike § 1225(b)(1) and (b)(2), § 1226 affords the government significant discretion with respect to detention. After arresting a noncitizen "[o]n a warrant issued by the Attorney General," the government "may continue to detain the arreste[e]" until a final removal decision is made or "may release" them on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Because Ramirez was not seeking admission at the border at the time of the instant detention, he is subject to § 1226 rather than § 1225. *Rodriguez Vazquez*,

183 F.4th at 1193.

Under § 1226, release on bond is available only if "the alien ... demonstrate[s] to the satisfaction of [an] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). If a noncitizen wishes to contest the initial custody determination—i.e., the denial or amount of bond—he has a right to do so before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Immigration judges must deny bond unless "an alien ... demonstrate[s], by clear and convincing evidence, that release would not pose a danger to other persons or to property" and "that the alien is likely to appear for any scheduled proceeding or interview." 8 C.F.R. § 1003.19(h)(3).

Ramirez argues that, in addition to these post-detention procedures, due process entitles him to a pre-deprivation hearing. "Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025); *see also Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (explaining the two-step inquiry for procedural due process claims).

If Ramirez establishes that he has a protected liberty interest, the Court must balance three factors to determine whether he is entitled to a hearing prior to being detained, or whether the post-detention review procedures set forth in § 1226 are sufficient to satisfy due process. Those three factors are (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To demonstrate his entitlement to permanent injunctive relief, Ramirez must also show that he is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008).

## III. ANALYSIS

### A. Ramirez has a protected liberty interest in avoiding immigration detention.

As noted above, the first step of the procedural due process analysis requires considering whether Ramirez has any interest protected by the Fifth Amendment. The answer to that question is clearly yes.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law." U.S. Const. amend. V; *see also Zadvydas*, 533 U.S. at 690. Once a noncitizen "enters the country, ... the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Indeed, the Supreme Court has long recognized that after a noncitizen "gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes," and as such, he "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).

Ramirez has certainly "established connections in this country," *id.*, sufficient to make him "a part of our population," *Yamataya*, 189 U.S. at 101. Ramirez has been living openly in the United States without ankle monitoring since 2019 and, until last month, he had not been in removal proceedings since 2022. Petition ¶¶ 17, 19. Together with his wife Garcia, Ramirez has a home in San Pablo, California, works to support two children, seeks to sponsor two additional children who are currently in a refugee children's shelter, and is a member of a local church. *Id.* ¶¶ 15, 20, 38; Garcia Decl. ¶¶ 2–3. He has clearly "develop[ed] ties," *Landon*, 459 U.S. at 32, in San Pablo. Ramirez is therefore entitled to due process under the Fifth Amendment.

The government argues that Ramirez lacks a protected liberty interest because, at the time of his arrest, "he was not in removal proceedings and he claims no actively pending application for

asylum." Response, Dkt. No. 9, at 3. But the government's argument "ignores that any form of detention constitutes a deprivation of liberty." *Murek v. Albarran*, No. 26-CV-10719-PCP, 2026 WL 3062130, at *3 (N.D. Cal. Oct. 13, 2026). Indeed, his interest in "unqualified liberty" is at least as strong as, and likely stronger than, the qualified liberty interest that attaches on conditional release. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Ramirez's protected liberty interest in remaining out of immigration custody could therefore be taken away only if the government's procedure for doing so complied with the requirements of the Due Process Clause.

**B. The *Mathews* factors all favor providing Ramirez with a pre-detention hearing.**

As noted above, *Mathews v. Eldridge* identifies three factors that must be balanced in determining what procedures due process requires with respect to the deprivation of a protected interest:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of these three factors supports the conclusion that Ramirez was and is entitled to a hearing before a neutral decisionmaker before being re-detained.

**1. Ramirez's private interest is substantial.**

As explained above, Ramirez has a substantial interest in remaining out of custody. Indeed, his interest in remaining free "from government custody, detention, or other forms of physical restraint [] lies at the heart of the liberty" protected by the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. The Court must be "careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Ramirez has lived free in the United States for over seven years, and he has a substantial interest in remaining in his home, continuing his employment, and providing for his household. *See Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025,

1033 (N.D. Cal. 2025) (holding that a petitioner had "an interest in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church"); *Chiguil Chiguil v. Noem*, No. 1:26-CV-1844 DAD CSK, 2026 WL 913195, at *5 (E.D. Cal. Apr. 3, 2026), *report and rec. adopted sub nom. Chiguil v. Noem*, 2026 WL 983134 (noting that "[t]he duration of petitioner's freedom prior to his detention elevates and underscores his interest in liberty").

Ramirez's private interest in remaining out of custody is thus substantial, and the first *Mathews* factor strongly favors Ramirez.

**2. The risk of erroneous deprivation and value of additional safeguards are high.**

As discussed above, Ramirez is subject to discretionary detention under § 1226(a). If re-detained, he would be entitled to a post-arrest bond hearing before an immigration judge. Because such a hearing would occur after his detention and thereby result in a deprivation of his liberty until such a hearing occurs, however, there remains a substantial risk that the government will erroneously deprive Ramirez of his liberty in the meantime.

"[W]here ... the petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (citation modified) (quoting *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025), *report and rec. adopted,* 2025 WL 1808676). That is because "neither [p]etitioner nor [r]espondents had an opportunity to determine whether any valid basis exists for [his] detention." *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025). There are only two bases for civil immigration detention: to prevent flight or to protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Even where some facts implicating these bases are present, they might not outweigh the private liberty interest at stake. *See* 8 C.F.R. § 1003.19(h)(3) (requiring the immigration judge to reach the relevant findings by clear and convincing evidence). Accordingly, "due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement *outweighs* the individual's constitutionally protected interest in avoiding physical

restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (emphasis added) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). Without a hearing, there is no meaningful opportunity for the government to consider all the facts weighing for and against physical restraint, and the noncitizen has no opportunity to contest those facts.

Here, both at the time of the detention and now, there was and is a significant risk that the deprivation of Ramirez's liberty in the time between his arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. That is because the government did not, and does not, have all the information needed to balance the interests at play. At the time of the detention, the government knew of only the 2023 arrest, and it presumably knew that local prosecutors did not pursue charges. Dkt. No. 16-3, at 2. The government now comes forward with additional incidents from 2020, 2021, and 2025 for which Ramirez was neither arrested nor charged. But even with those facts, the government did not and could not have appropriately weighed the extent of Ramirez's liberty interest and other considerations weighing against his detention, such as his family's insistence that he remain free. Garcia Decl. ¶¶ 6–7. Accordingly, with only part of the relevant information, there was and is a considerable risk that the government will erroneously weigh the interests at stake if it detains Ramirez without a hearing. *See Hernandez*, 872 F.3d at 990.

Conversely, providing Ramirez with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis. Along with Ramirez's liberty interest and the interests of his family, "[s]uch a hearing would enable the decisionmaker to understand precisely what [Ramirez] did, whether it was aberrant or unreflective of his typical behavior, and how he has conducted himself since that time." *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025).

The second *Mathews* factor therefore also weighs in Ramirez's favor.

**3. The government's countervailing interest is minimal.**

Finally, the government has only a minimal countervailing interest in detaining Ramirez without a pre-deprivation hearing.

The government might have an interest in detaining Ramirez during the pendency of his

renewed removal proceedings to "protect[] the public" or to "prevent [his] flight." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). But where the government has previously determined that a noncitizen can be released from detention, the government generally "may not re-arrest that noncitizen absent a change in circumstance." *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1078 (N.D. Cal. 2025) (citation modified).

The government argues that Ramirez's 2023 arrest, combined with the other incidents for which he was neither arrested nor charged, constitute changed circumstances. The allegations against Ramirez are serious and the Court in no way minimizes them. But the question here is not whether the government has any interest in detaining Ramirez. Rather, the Court must consider whether the government had or has an interest in detaining Ramirez *before* providing him with a hearing. Accordingly, the relevant changed circumstances must not only demonstrate that Ramirez may be a danger to the public but also demonstrate that there was sufficient "urgency" to justify the government's decision to depart from the default pre-deprivation requirements of due process. *Hernandez Serrano v. Albarran*, No. 26-CV-03452-EKL, 2026 WL 1611876, at *3 (N.D. Cal. June 4, 2026) (holding there was "no urgency" where petitioner was arrested on domestic violence charges six months prior to the detention and no criminal charges were filed); *Mucu Maaz v. Albarran*, No. 5:26-CV-08452-BLF, 2026 WL 2447545, at *3 (N.D. Cal. Aug. 20, 2026) ("[A]bsent evidence of *urgent* concerns, a pre-deprivation hearing is required even for noncitizens with new arrests." (emphasis added)). That default is, of course, "a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (original emphasis).

The 2023 arrest and other incidents do not demonstrate the requisite urgency. First, they are too far removed in time from the instant detention, given that the latest incident occurred almost two years ago. Dkt. No. 16-2, at 2; *see Llanes Tellez*, 826 F. Supp. 3d at 1153 ("[T]he events underlying the conviction occurred more than two years ago…."). Second, they are too inconclusive as to the danger that Ramirez might pose. "[M]erely being arrested on a charge"—let alone being accused of misconduct without an arrest or indictment—"does not establish a criminal conviction that would actually allow the government to infer the noncitizen at issue can be

assumed to be a danger to the community." *Osorio v. Albarran*, No. 26-CV-08783-PCP, 2026 WL 2741855, at *5 (N.D. Cal. Sept. 16, 2026); *see also Ortega Macario v. Albarran*, 2026 WL 191626, at *6 (N.D. Cal. Feb. 2, 2026); *Mucu Maaz*, 2026 WL 2447545, at *3. Garcia's declaration, while possibly in tension with some of the supplemental evidence submitted by the government, further undercuts the argument that the prior incidents necessitate Ramirez's urgent detention. Garcia Decl. ¶ 7 ("I am not afraid of Ernesto, nor do I think he is unsafe for children.").[3] As does the fact that ORR social workers visited Ramirez and Garcia's home, interviewed the family—including about the domestic violence allegations—and approved their home as a safe placement for Garcia's son and niece. Petition ¶ 24; Garcia Decl. ¶ 9.

Finally, the government cannot claim that providing a pre-deprivation hearing would impose a significant financial or administrative burden, because such custody hearings are "routine and impose a minimal cost" making their cost much lower than the cost of detaining petitioners. *Pablo Sequen*, 806 F. Supp. 3d at 1090.

All three *Mathews* factors thus favor Ramirez, and due process requires that the government provide him a bond hearing before a neutral decisionmaker prior to any re-arrest or detention.

**C. The remaining factors weigh in favor of permanent injunctive relief.**

To demonstrate his entitlement to permanent injunctive relief, Ramirez must also show that he is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 20, 32. The final two factors—the balance of the equities and public interest—merge because the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Ramirez has made

[3] The government insists that "this case is all about protecting victims of domestic violence" and that "ICE acted decisively to protect the victims." Supp. Resp. at 2. While immigration officials do have the authority to detain noncitizens based on their danger to the community, immigration detention is a blunt tool that is poorly suited to the nuances of domestic violence, some of which appear to be on display in this record. And to the extent that domestic violence is a proper basis for civil immigration detention, a pre-deprivation hearing appears to be all the more important, as such a hearing can facilitate consideration of the victims' wishes and help officials understand how family dynamics might have changed since the last incident. *See Llanes Tellez*, 826 F. Supp. 3d at 1153–54.

the necessary showings.

The likely unconstitutional deprivation of liberty that Ramirez would face if he was subject to re-detention without a pre-deprivation bond hearing would constitute an immediate and irreparable harm. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). It follows "inexorably" from the conclusion that Ramirez will suffer an unconstitutional deprivation of liberty absent injunction that he has also "carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The balance of the equities and public interest also favor Ramirez. First, "[b]ecause public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). Further, "the Ninth Circuit has recognized that 'the costs to the public of immigration detention are staggering.'" *Jorge M.F. v. Wilkinson*, No. 21-cv-01424, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting *Hernandez*, 872 F.3d at 996).

In contrast to the irreparable harm Ramirez would suffer, the potential harm to the government would be minimal—at most, a short delay in detaining Ramirez until a neutral decisionmaker determines that his detention is legally warranted. And for the reasons noted above, the government has not demonstrated that the public interest in preventing Ramirez's flight or preventing him from harming the public would be significantly served by his immediate detention without a hearing. Finally, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

All *Winter* factors thus favor granting a permanent injunction.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants Ramirez's petition for a writ of habeas corpus and permanently enjoins the government from re-detaining Ramirez without first providing him with a pre-detention bond hearing before a neutral immigration judge. Ramirez must be provided with at least seven days' notice of any such bond hearing. The government may re-detain Ramirez only if, at such a bond hearing, the government bears its burden of demonstrating by clear and convincing evidence that Ramirez is a danger to the community or a flight risk and that no conditions other than detention would be sufficient to prevent such harms. The hearing must also consider Ramirez's ability to pay a bond. *Hernandez*, 872 F.3d at 991–92. This order does not address the circumstances in which the government may detain Ramirez in the event he becomes subject to an executable final order of removal.

**IT IS SO ORDERED.**

Dated: November 5, 2026

P. Casey Pitts
United States District Judge